**George D. LEPEL, Plaintiff-Appellee,**

**v.**

**H. C. HITCH, Jr., et al., Defendant-Appellants.**

**No. 71-1581.**

United States Court of Appeals, Tenth Circuit.

Oct. 19, 1972.

---

Hugh J. McClearn, Denver, Colo., for plaintiff-appellee.

Robert G. Grove, Oklahoma City, Okl., for defendant-appellants.

Before HILL and BARRETT, Circuit Judges, and LANGLEY, District Judge.

PER CURIAM.

The appellee, as plaintiff below, sued the appellants for breach of an agistment contract and was awarded damages by a jury. The appellants contend the verdict against them resulted from erroneous instructions of the trial court which in effect rewrote the agreement.

Under the agistment contract the appellee, owner of a livestock feeding facility in Colorado, agreed in writing with the appellants to feed and care for approximately 800 head of cattle to be supplied by the appellants, for a minimum period of ninety days. The parties further agreed that the cattle to be supplied would be of such size and condition as the appellants should determine, that the appellants would stand natural death losses, that the appellee would furnish labor and medicine for the care of sick cattle and that in case of excessive sickness arrangement for such care would be made by mutual consent, that any cattle lost or missing as the result of the appellee's negligence would be his responsibility, and that any cattle not making satisfactory weight gain would by mutual agreement be removed from the lot. Provision was also made for determining weight gain and payment at the end of the feeding period.

In early September, 1967, 653 head of cattle were delivered for feeding pursuant to the contract and about four months later the surviving cattle, 548 head, were returned. No additional cattle were furnished, and while at the feed lot 105 head died. The total weight gain of the returned cattle was 19,080 pounds, which according to the evidence was less than usual. The appellee, in his suit, alleged the cattle supplied were excessively sick when delivered, which resulted in abnormal death loss, lack of normal weight gain, and extra feed and care and expense. As damages, he demanded the value of the bargain: the profit he would have made if the full number of 800 head had been furnished as agreed and the cattle had been reasonably healthy and capable of normal survival and weight gain. He also claimed damages for unanticipated expenses incurred for feed, medicine, and labor as a result of the sub-normal condition of the cattle. In its instructions the trial court told the jury that implicit in the contract was the understanding of the parties that the cattle supplied by the appellants were to be reasonably healthy when delivered, and that the jury must first determine whether or not the cattle were in fact "sick to a degree that the parties did not anticipate". If this issue was resolved against the appellants, the court advised the jury, damages should be awarded on the basis of the appellee's loss of profit and "out of pocket loss" resulting from the appellants' breach of the implied warranty.

The appellants made appropriate and timely objection to the trial court's instructions in this regard and contend here that the death loss, the excessive sickness, and the failure to gain weight are covered by the contract; that it is unambiguous and clearly anticipates exactly what happened. The trial court, they say, in its charge to the jury rewrote the agreement to include warranties that were not present in the instrument. The contract does in fact specifically allow the appellants to determine the condition and size of the cattle to be furnished, makes provision for removing cattle not gaining weight satisfactorily, provides for adjustment of costs by mutual consent in the event of excessive sickness, and specifies the deduction to be made for natural death loss. The trial court took the position in effect, however, and instructed the jury accordingly, that the parties did not contemplate in entering upon the contract that the right of the appellants to determine

the condition of the cattle to be supplied should include the right to furnish excessively sick cattle, and that the other pertinent provisions of the agreement governed conditions that might develop during the course of feeding after reasonably healthy cattle had been delivered. It is this reading of the contract to which the appellants object.

 We agree with the trial court. Delivery of animals pursuant to a contract of agistment clearly constitutes a bailment of the animals (4 Am.Jur.2nd, Animals, Section 72), and while we find little help in the decisions with respect to the specific situation here involved, we have no trouble in applying the well established general rule in bailment contracts that in the absence of an agreement to the contrary or of circumstances requiring a different conclusion, there is an implied warranty that the bailed chattels are reasonably suited to the purpose contemplated by the bailment agreement. (8 C.J.S. Bailments § 25, p. 380) Here, the purpose of the agreement was to fatten up the cattle to the profit of both the agistor and the owners. It is difficult to believe that the appellee, as agistor, deliberately entered into an agreement to take on the feeding of cattle which were excessively sick, which the jury obviously found these were, or one which gave the cattle owners an option to supply such cattle. In fact, we doubt seriously, on the basis of the record in this case, that the owners themselves had in mind to supply anything other than reasonably healthy cattle when they made the contract. There is ample evidence that nothing but a usual, customary feeding program to increase weight was contemplated by the parties. Whether or not the cattle supplied by the owners were suitable for that purpose was a matter properly submitted to the jury for determination. We find no error in the court's instructions in this respect.

Nor do we find any error in the trial court's instructions as to damages in the event the issue of liability was resolved against the appellants. We have examined the appellants' objections thereto and find them to be without merit.

Affirmed.